**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

**Tara Herivel, OSB #070418**
Tara@heriveldefense.com
Law Firm of Tara Herivel, LLC
811 S.W. Naito Parkway, Suite 420
Portland, Oregon 97204
Telephone: (503) 893-5525
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| **SHANNON CLARK**, **JOSHUA KRUMWEIDE**, **DAVID LARUE**, **ALEXIE LAWLER**, **ANTHONY MATHIS**, **RAUL MARQUEZ**, **LUIS NAVARRETE**, **VALENTINE PASCU**, **ANDREW PIERSON**, **CHRISTOPHER PITMAN**, **TRACY RASBERRY**, **JEFF ROBERTS**, **CHRISTOPHER SELIGER**, **ANTHONY TAYLOR**, and **MARK WICKLUND**, individually and on behalf of those similarly situated, | Case No. 3:21-cv-501 |
| | **CLASS ACTION ALLEGATION COMPLAINT** |
| Plaintiffs, | 42 U.S.C. § 1983 |
| v. | **JURY TRIAL DEMANDED** |
| **MULTNOMAH COUNTY**, a political subdivision of the state of Oregon; **MICHAEL REESE**, Multnomah County Sheriff, **STEVEN ALEXANDER**, Chief Deputy of Corrections, and **KURTISS MORRISON**, Facility Commander, | |
| Defendants. | |

PAGE 1 – CLASS ACTION COMPLAINT

## INTRODUCTION

1.      Plaintiffs are, or were, adults in custody (AIC) of the Multnomah County

Inverness Jail (Inverness). Plaintiffs, individually and on behalf of all others similarly situated,

bring claims arising from Inverness staff's failure to protect AICs from contracting the novel

coronavirus COVID-19. Each plaintiff contracted COVID-19 due to the deliberate indifference

or negligence by defendants. Defendants willfully disregarded standard safety guidelines, refused

to take preventative measures, denied AIC proper testing and treatment, and knowingly

comingled infected AICs or guards with non-infected AICs. Plaintiffs seek injunctive relief,

economic and non-economic damages, and attorney fees and costs.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983, the 8th and 14th

Amendments to the United States Constitution, and supplemental state law negligence claims.

3.      This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343,

supplemental jurisdiction of the state law negligence claims pursuant to 28 USC § 1367.

4.      Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the

claim arose in this Judicial District.

## PARTIES

5.      Plaintiffs Shannon Clark, Joshua Krumweide, David Larue, Alexie Lawler,

Anthony Mathis, Raul Marquez, Luis Navarrete, Valentine Pascu, Andrew Pierson, Christopher

Pitman, Tracy Rasberry, Jeff Roberts, Christopher Seliger, Anthony Taylor, and Mark Wicklund

were, and continue to be, AICs in the custody of Multnomah County and housed at Inverness.

6.      Plaintiff Alexi Kulakevich was an AIC in the custody of Multnomah County and

housed at Inverness.

PAGE 2 – CLASS ACTION COMPLAINT

7.      Defendant Multnomah County is an Oregon county and political subdivision of the State of Oregon. The County operates Inverness. The County has a duty to provide for the health and safety of all people held at Inverness, including appropriate and necessary protection measures and medical and mental health care.

8.      Defendant Michael Reese is the Sheriff of Multnomah County. He is responsible for the operation of Inverness and for the welfare of all AICs at Inverness. Defendant Reese supervised, administrated, and managed all employees of the sheriff office, and was responsible for ensuring the presence and implementation of proper policies, procedures, and training. Defendant Reese was responsible for the training, supervision, and discipline of County employees or agents of the sheriff's office. At all times material, defendant Reese was acting under color of state law.

9.      Defendant Steven Alexander is the Chief Deputy of Corrections for the Multnomah County Sheriff's Office (MCSO). He is responsible for the operation of Inverness and for the welfare of all AICs at Inverness. Defendant Alexander supervised, administrated, and managed all employees of the sheriff office, and was responsible for ensuring the presence and implementation of proper policies, procedures, and training. Defendant Alexander was responsible for the training, supervision, and discipline of County employees or agents of the sheriff's office. At all times herein pertinent, defendant Alexander was acting under color of state law.

10.     Defendant Kurtiss Morrison is a MCSO Captain and is the Facility Commander of Inverness. He is responsible for the operation of Inverness and for the welfare of all AICs at Inverness. Defendant Morrison supervised, administrated, and managed all employees at Inverness, and was responsible for ensuring the presence and implementation of proper policies,

PAGE 3 – CLASS ACTION COMPLAINT

procedures, and training. Defendant Morrison was responsible for the training, supervision, and discipline of County employees or agents at Inverness. At all times herein pertinent, defendant Morrison was acting under color of state law.

11.     At this time, Plaintiff's do not have access to discovery to learn the identities of additional defendants responsible for the harm alleged herein. Plaintiffs will amend to include County employees, officers, administrators, and supervisors responsible for the jail security, AIC health and safety, provision of medical services, enactment and implementation of policies, practices, and customs relating to these issues, and the delivery of health care at Inverness.

## FACTUAL ALLEGATIONS

12.     Inverness houses pretrial detainees and persons convicted of crimes. The County is obligated by state and federal law to provide for the health and safety of all persons lodged in the Inverness and to provide medical and mental health care for the same.

13.     COVID-19 can be spread from person to person through respiratory droplets, contact with contaminated objects or surfaces, and by being in close personal contact with anyone infected with the virus. At the time plaintiffs were infected, a vaccine for the COVID-19 disease was not available to them nor any specific medications to prevent or treat it. The only known measures for reducing the spread of the illness were maintaining at least six feet of distance between people, frequent hygiene including hand washing, cleaning and disinfecting touched surfaces (such as phones, handles, trays, tables, etc.), and covering one's mouth and nose with a mask. Since the beginning of the pandemic, COVID-19 has spread particularly effectively in environments such as nursing homes, prisons, and jails. This was known long before any of the plaintiffs contracted COVID-19.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

14.     Inverness does not follow, or enforce, this State's required precautions to prevent the spread of the disease COVID-19, as set forth under Governor Kate Brown's Executive Orders, the Center for Disease Control (CDC) and Oregon Health Authority (OHA), currently in effect to protect all Oregonians except AICs. By failing to follow established guidelines, defendants placed plaintiffs in imminent danger of acute illness, even death, by depriving them of essential medical care or protection from COVID-19.

15.     By any measure, defendants' response to the COVID-19 pandemic has been woefully inadequate. The recent trend is alarming and illuminates defendants' negligence and deliberate indifference:

a.     On December 21, 2020, an AIC at Inverness had a positive COVID-19 test result. On December 23, 2020, another AIC tested positive.[1]

b.     As of February 2, 2021, 107, adults in custody tested positive for COVID-19.[2]

c.     As of February 10, 2021, 145 adults in custody tested positive for COVID-19 and 94 individuals remain in isolation.[3]

d.     As of February 12, 2021, 172 adults in custody tested positive for COVID-19.[4]

e.     As of February 17, 2021, 192 adults in custody at Inverness have tested positive for COVID-19. Another 29 staff members, or members of their households, have also tested positive.[5]

---

[1] https://multco.us/multnomah-county/news/adults-custody-test-positive-covid-19
[2] https://multco.us/multnomah-county/news/update-covid-19-cases-inverness-jail
[3] https://multco.us/multnomah-county/news/inverness-jail-outbreak-increases-local-state-health-officials-review#:~:text=As%20of%20Feb.%2010%2C%20145,There%20have%20been%20no%20deaths
[4] https://multco.us/multnomah-county/news/update-covid-19-cases-inverness-jail-0
[5] https://multco.us/multnomah-county/news/update-covid-19-outbreak-inverness-jail

PAGE 5 – CLASS ACTION COMPLAINT

16.      To put these numbers in in context, Inverness houses about 512[6] AICs and therefore, as of February 17, 2021, 37.5% of AICs in Inverness custody have tested positive for COVID-19. By contrast, as of February 19, 2021, Oregonians overall contracted COVID at a rate of 3.5%.

17.      The reason for the outbreak is not a mystery. Contrary to the federal and state guidance regarding COVID-19, Oregon jails do not keep AICs adequately separated from each other or potentially infected jail staff, supply adequate soap or sanitizer, or provide adequate access to sinks, masks, or other Personal Protective Equipment ("PPE") to prevent contraction of COVID-19. These jails do not adequately quarantine AICs from staff or AICs in transport to or from the jail. The jails do not adequately screen staff for coronavirus contacts or symptoms. The jails lack adequate health care services and capacity to preserve the lives of plaintiffs and other AICs suffering from acute, life-threatening COVID-19 infections, where infection of AICs and jail staff is erupting. Prison conditions – like communal-use toilets without lids, shared items in the dining hall, shared telephones and tablets, inadequate handwashing sinks and individual use soaps, lack of hand sanitizer, cleaning supplies, unenforced mandates on the use of PPE, etc. – present unsafe living conditions where COVID-19 has spread. Defendants' failure to require, or enforce, social distancing, PPE, increased testing, or other precautions in jails and jails known to slow the spread of COVID-19 placed plaintiffs at imminent risk of contracting COVID-19.

18.      Inverness does not enforce use of PPE by its staff. Inverness corrections staff routinely do not wear masks and express statements disapproving of wearing masks. Not wearing masks placed plaintiffs at immediate risk of harm by spread of COVID-19. Indeed, because

---

[6] https://multco.us/multnomah-county/news/update-covid-19-cases-inverness-jail

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

inmates are not allowed public visitors, only inmates that were not properly screened and tested prior to entry or jail staff could have spread COVID-19 to plaintiffs.

19.     Additionally, defendants do not require AICS to use PPE. For example, AICS transported to medical were not required to wear masks and AICs working in the kitchen were not required to wear masks and gloves.

20.     At least as late as February 5, 2021, AICs were told they did not have to wear masks while preparing food in the kitchen for other inmates.

21.     On February 6, 2021, AICs working the kitchen were told their dorm was on medical lockdown. The reason was a due to AICs testing positive for COVID-19 or being exposed to AICs that tested positive. Despite the known risk, the AICs working in the kitchen were required to continue preparing food for other AICs putting the entire jail population in danger.

22.     Further, defendants have implemented little, if any social distancing, measures at the jail, which is required to prevent spread of an infectious disease like COVID-19. AICs and staff did not maintain required social distancing in dorms, kitchens, hallways, during court transportation, or holding cells.

23.     Additionally, defendants ignored AICs reports of COVID-19 related symptoms, failed to conduct basic screening such as taking AICs temperatures, downplayed symptoms, and used intimidating and scare tactics towards inmates who complained or reported symptoms or requested testing or treatment.

24.     Defendants required AICs continue to work or comingle while waiting for test results despite having symptoms or other factors that an AIC was likely to test positive.

PAGE 7 – CLASS ACTION COMPLAINT

25.     Requiring that face coverings be worn in the jails is a critical part of the plan to decrease exposure to COVID-19 and to contain any outbreak, should one occur. Staff that come and go from the facilities are one of the greatest risks for introduction of COVID-19 into the jails. The Sheriff has revised the direction about wearing masks over time:

    a.  In early April 2020, the Sheriff issued a recommendation for all staff to wear masks when within 6 feet of each other, per CDC guidance.

    b.  On June 24, 2020, the Sheriff issued a face covering policy consistent with the Governor and County Chair's direction for the use of face coverings – mandating face coverings in all jail settings because physical distancing can be difficult.

    c.  On August 6, 2020, the Sheriff upgraded the policy to the level of a special order mandating the use of face coverings. The distinction between policy and special order is important because a special order allows for staff members to be disciplined for noncompliance.[7]

26.     In fall 2020, Multnomah County Auditor's Office sent a survey to all county employees to provide them with an opportunity to communicate their experiences during the pandemic. More than 50% of MCSO staff in the jails who responded to the survey reported that County employees wear face coverings only sometimes or rarely. Of the 458 MCSO staff members that work in the jail, 216 responded to this question. Staff reported that some of their coworkers were not taking COVID-19 seriously and not complying with face covering requirements.

---

[7] Multnomah County Auditor's Office Audit of Multnomah County's Pandemic Response February 2020 pp. 17-18.. Available https://multco.us/file/95008/download.

PAGE 8 – CLASS ACTION COMPLAINT

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

27.    Despite the extremely high noncompliance with the special order mandating face coverings, as of October 23, 2020, MCSO reported that they had not disciplined any staff for non-compliance with the face covering order.[8]

28.    Similarly, 75% of MCSO staff in the jails who responded to the survey reported that AIC's wear face coverings only sometimes or rarely.

29.    The MCSO uses washable cloth face coverings for both adults in custody and staff. Adults in custody may exchange their mask for a clean one each week. This contrasts with CDC guidelines, which call for cloth face coverings to be washed when dirty, but at least every day if used.[9]

30.    Instead of being proactive to protect Plaintiffs, defendants only act when told to do so. For example, on January 15, an adult in custody at Inverness tested positive for COVID-19. Only after being advised by county Public Health staff, Corrections Health performed testing of those exposed to identify newly infected individuals. This quickly revealed 81 additional individuals in multiple dorms that tested positive.[10]

31.    On January 21, again per public health recommendations, a second round of testing was performed, identifying another eleven adults that tested positive for COVID-19.[11]

32.    Defendants failed to properly utilize the testing available to prevent the COVID-19 outbreak at Inverness. At a minimum, corrections health is capable of performing at least 120 tests per day."[12] In other words, defendants could easily test approximately 25 percent of the

---

[8] *Id.* at 18

[9] Id at 19.

[10] https://multco.us/multnomah-county/news/corrections-health-continues-monitor-covid-19-cases-inverness-jail-0

[11] https://multco.us/multnomah-county/news/corrections-health-continues-monitor-covid-19-cases-inverness-jail

[12] https://multco.us/multnomah-county/news/public-and-corrections-health-brief-board-amidst-sharp-decline-covid-19-cases

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

adults in custody per day to identify AICs that have contracted COVID-19 and stop the spread. Every four days the entire AICs population could be tested.

33.    Despite this capability, rapid testing was only used 194 times in 2020. [13] Corrections Health has only recently increased the use of rapid testing at the direction of Public Health Staff. [14] In the first two and a half months of 2021, Corrections Health has completed 900 tests.[15]

34.    Defendants knew or should have known its employees were not observing social distancing, wearing masks or otherwise protecting against the spread of COVID-19 and that this presented a significant risk of infecting AICs such as the plaintiffs.

35.    Defendants knew or should have known that placing COVID-infected AICs in cells, units or dormitories with uninfected AICs presented a significant risk of infecting AICs such as the plaintiffs.

36.    Defendants knew or should have known that returning symptomatic AICs awaiting test results to their units to await results presented a significant risk of infecting AICs such as the plaintiffs.

37.    Defendants knew or should have known that failing to protect Plaintiffs would result in their suffering physical harm and severe physical and mental pain and suffering.

38.    As a result of defendants' failure to protect them, plaintiffs suffered physical harm and severe physical and mental pain and suffering.

---

[13] https://multco.us/multnomah-county/news/public-and-corrections-health-brief-board-amidst-sharp-decline-covid-19-cases
[14] https://multco.us/multnomah-county/news/corrections-health-continues-monitor-covid-19-cases-inverness-jail-0
[15] https://multco.us/multnomah-county/news/public-and-corrections-health-brief-board-amidst-sharp-decline-covid-19-cases

PAGE 10 – CLASS ACTION COMPLAINT

39.     On February 7, 2021, an AIC was transferred from D7 to D11. Before the transfer, the inmate was tested for COVID-19. Instead of waiting for the results, he was transferred to D11 and while staff were still determining whether he had tested positive. In response to being exposed in D11, another inmate requested to be tested but was told that it was none of his business and was tasered.

**Shannon Clark**

40.     Plaintiff Clark contracted COVID-19 at Inverness and, as a result, he experienced COVID-19 related symptoms and harm.

**Joshua Krumweide**

41.     Plaintiff Krumweide contracted COVID-19 at Inverness and, as a result, he experienced COVID-19 related symptoms and harm. He tested positive on January 21, 2021.

42.     On January 13, 2021, Plaintiff Wicklund was transferred downtown for court and was placed in a holding cell with approximately ten quarantined AICs for several hours. Wicklund was then transported to Inverness with the AICs on quarantine. Upon arrival it was announced that eleven new AICs arrived. After about a half-hour they realized Wicklund was not a new AIC, potentially exposed to C, and should not have been with the other ten AICs. Wicklund was then moved to another holding cell with two other AICs that were not on quarantine, potentially exposing them to C. Instead of quarantining Wicklund, he was placed back into dorm 10 with healthy AICs, thereby exposing the AICs to C. On January 15, 2021, Wicklund began experiencing symptoms and ultimately tested positive for C. Krumweide began experiencing symptoms around January 18, 2021. After testing positive he was moved to dorm 18 where laid on a bed chocking and coughing. He was scared for his life and was spitting up blood before being taken to OHSU.

PAGE 11 – CLASS ACTION COMPLAINT

**David Larue**

43.     Plaintiff Larue contracted COVID-19 at Inverness and, as a result, he experienced COVID-19 related symptoms and harm. He tested positive on January 27, 2021 after being exposed on dorm 10.

**Alexie Lawler**

44.     Plaintiff Lawler contracted COVID-19 at Inverness and, as a result, he experienced COVID-19 related symptoms and harm. He tested positive on February 8, 2021.

45.     Lawler worked in the kitchen and was threatened with being sent to the hole if he refused to work in the unsafe working conditions of the kitchen.

**Anthony Mathis**

46.     Plaintiff Mathis contracted COVID-19 at Inverness and, as a result, he experienced COVID-19 related symptoms and harm. He tested positive on January 25, 2021 after being exposed on dorm 10.

**Raul Marquez**

47.     Plaintiff Marquez contracted COVID-19 at Inverness and, as a result, he experienced COVID-19 related symptoms and harm. He tested positive on January 25, 2021 after being exposed on dorm 10.

48.     On January 13, 2021, Plaintiff Wicklund was transferred downtown for court and was placed in a holding cell with approximately ten quarantined AICs for several hours. Wicklund was then transported to Inverness with the AICs on quarantine. Upon arrival it was announced that eleven new AICs arrived. After about a half-hour they realized Wicklund was not a new AIC, potentially exposed to C, and should not have been with the other ten AICs. Wicklund was then moved to another holding cell with two other AICs that were not on

PAGE 12 – CLASS ACTION COMPLAINT

quarantine, potentially exposing them to C. Instead of quarantining Wicklund, he was placed back into dorm 10 with healthy AICs, thereby exposing the AICs to C. On January 15, 2021, Wicklund began experiencing symptoms and ultimately tested positive for C.

### Luis Navarrete

49.     Plaintiff Navarrete contracted COVID-19 at Inverness and, as a result, he experienced COVID-19 related symptoms and harm. He tested positive on January 28, 2021. Navarrete was housed with AICs that reported C symptoms for several days without any action to quarantine them and protect the AICs in the dorm.

### Valentine Pascu

50.     Plaintiff Pascu contracted COVID-19 at Inverness and, as a result, he experienced COVID-19 related symptoms and harm. He tested positive on February 7, 2021.

51.     Pascu was housed in dorm 7, which was under quarantine in late January or early February. Despite being under quarantine, on February 3, 2021, Pascu was transported to dorm 11, which was not on quarantine.

52.     On February 6, 2021, Pascu was then moved back to dorm 7.

53.     On February 7, 2021, Pascu tested positive for C and was moved to dorm 12. He was transferred to dorm 18 on February 16, 2021.

54.     On February 17, 2021 he was moved to dorm 11 and experienced retaliation because he potentially spread C to other AICs and felt threatened.

55.     Pascu witnessed Aramark employees, deputies, and saregents not wearing PPE or following other safety guidelines.

PAGE 13 – CLASS ACTION COMPLAINT

**Andrew Pierson**

56.    Plaintiff Pierson contracted COVID-19 at Inverness and, as a result, he experienced COVID-19 related symptoms and harm. Pierson is housed in dorm 7, the kitchen worker dorm. Kitchen workers were told there was no need to wear masks in the kitchen. There was no mandate to wear masks in the kitchen after December 2020. Masks were thin fabric, flimsy and often fell off. Since the masks were often damaged or rendered ineffective, guards told AICs they did not have to wear them. Additionally, the guards do not wear masks in the kitchen. The gloves provided to kitchen workers were flimsy, easily damaged, and often fell off. Consequently, many AICs did not wear gloves and were not required to do so. Kitchen workers touch the food, drink containers, cutlery and trays of inmates, and transport food around the jail. The carts and kitchen materials are not disinfected between uses. Aramark kitchen workers contracted COVID-19 and reported to work and worked around AICs in the kitchen. Pierson tested positive on February 6, 2021.

**Christopher Pitman**

57.    Plaintiff Pitman is a current AIC at Inverness, contracted COVID-19 while at Inverness, and has experienced COVID-19 related symptoms and harm. He is housed in dorm 7. He is a kitchen worker. He tested positive on February 8, 2021.

**Tracy Rasberry**

58.    Plaintiff Rasberry contracted COVID-19 at Inverness and, as a result, he experienced COVID-19 related symptoms and harm. He tested positive on February 8, 2021.

**Jeff Roberts**

59.    Plaintiff Roberts contracted COVID-19 at Inverness and, as a result, he experienced COVID-19 related symptoms and harm. He tested positive on January 29, 2021.

PAGE 14 – CLASS ACTION COMPLAINT

**Christopher Seliger**

60.    Plaintiff Seliger contracted COVID-19 at Inverness and, as a result, he experienced COVID-19 related symptoms and harm. He tested positive on January 28, 2021. Seliger was housed with AICs that reported C symptoms for several days without any action to quarantine them and protect the AICs in the dorm.

**Anthony Taylor**

61.    Plaintiff Taylor contracted COVID-19 at Inverness and, as a result, he experienced COVID-19 related symptoms and harm. He tested positive on February 8, 2021.

**Mark Wicklund**

62.    Plaintiff Wicklund contracted COVID-19 at Inverness and, as a result, he experienced COVID-19 related symptoms and harm.

63.    On January 13, 2021, Plaintiff Wicklund was transferred downtown for court and was placed in a holding cell with approximately ten quarantined AICs for several hours. Wicklund was then transported to Inverness with the AICs on quarantine. Upon arrival it was announced that eleven new AICs arrived. After about a half-hour they realized Wicklund was not a new AIC, potentially exposed to C, and should not have been with the other ten AICs. Wicklund was then moved to another holding cell with two other AICs that were not on quarantine, potentially exposing them to C. Instead of quarantining Wicklund, he was placed back into dorm 10 with healthy AICs, thereby exposing the AICs to C. On January 15, 2021, Wicklund began experiencing symptoms and ultimately tested positive for C.

**Alex Kulakevich**

64.    Alex Kulakevich was an AIC at Inverness and contracted COVID-19 while at Inverness, and has experienced COVID-19 related symptoms and harm.

PAGE 15 – CLASS ACTION COMPLAINT

65.    All of the plaintiffs contracted COVID-19 as a result of defendants' failure to impose reasonable and mandatory measures to protect AICs from contracting COVID-19.

66.    As a direct and proximate result of defendants' failure to undertake appropriate safety measures, as well as Inverness's affirmative actions that placed plaintiffs at risk of infection, plaintiffs contracted COVID-19.

## CLASS ACTION ALLEGATIONS

67.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) or 23(c)(4), on behalf of themselves and on behalf of all others similarly situated.

68.    Plaintiffs seek injunctive relief on behalf of all AICs currently or who will be held in custody at Inverness in the future. Plaintiffs seek damages on behalf of all AICs who have been in custody at Inverness and have tested positive for COVID-19.

### Fed. R. Civ. P. 23(a) Prerequisites

69.    **Numerosity**. The class is so numerous that joinder of all members is impracticable. At a minimum the class includes the 192 people that have tested positive for COVID-19 as of February 17, 2021 and all other people that have contracted COVID-19 or will in the future.

70.    **Common Questions of Law and Fact.** There are questions of law or fact common to the class that predominate over any questions affecting only individual members, including, but not limited to, whether defendants:

    a.    failing to require adequate social distancing;

    b.    failing to require AICs, staff, or agents to wear masks or other PPE;

    c.    failing to quarantine COVID-infected AICs from uninfected AICs;

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

d.  placing AICs that were symptomatic or who had tested positive with COVID in confined spaces, such as cells, workspaces, and transportation vehicles, with AICs that had not been infected with COVID-19;

e.  requiring AICs that were housed in quarantine units (with COVID-19 positive AICs) to work, eat, serve food, and otherwise interact in person with AICs from nonquarantine units;

f.  failing to quarantine AICs with COVID symptoms or awaiting testing or test results from uninfected AICs;

g.  allowing corrections staff with known COVID-19 symptoms to work in the institutions;

h.  failing to properly sanitize and disinfect facilities, equipment, and commonly touched surfaces such as telephones, tablets, and door handles;

i.  failing to screen or take necessary steps to prevent employees or other people that were symptomatic or had been exposed to COVID from entering a facility;

j.  failing to test symptomatic AICS;

k.  failing to contact trace to identify people who were exposed to AICS or staff that tested positive;

l.  failing to test people who were exposed to AICS or staff that tested positive; and

m.  failing to screen or test AIC transfers, employees, and other people entering a facility for symptoms or exposure.

PAGE 17 – CLASS ACTION COMPLAINT

71.     **Typicality**. Plaintiffs' claims are typical of the claims of the class because they all suffered from the same policies or practices alleged herein and seek the same type of relief. Plaintiffs' claims are typical of class members' claims in that:

     a.   Plaintiffs were affected by the violations described above;

     b.   Plaintiff's claims stem from the same practices and/or courses of conduct that form the basis of the claims;

     c.   Plaintiff's claims are based upon the same legal and remedial theories as those of the class and involve similar factual circumstances; and

     d.   Plaintiff's injuries are similar to the injuries which class members have suffered.

72.     **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the class. There is no conflict between Plaintiffs' claims and those of other class members, the claims are typical, and the interests of the class members will be fairly and adequately protected by Plaintiffs and their counsel. Plaintiffs have retained counsel with experience handling class actions, habeas, complex civil rights and employment cases, and personal injury cases. Class counsel includes counsel with extensive experience, including trial, appeal, and settlement of actions and complex cases in federal and state courts.

### Fed. R. Civ. P. 23(b)(3) Factors

73.     The questions of law or fact common to class members, as stated above, predominate over any questions affecting only individual members because Plaintiffs' claims are based on conduct by the defendants common to all class members.

74.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy:

PAGE 18 – CLASS ACTION COMPLAINT

a. Most individual members of the class have little interest in or ability to prosecute an individual action due to the complexity of the issues involved in this litigation;

b. Counsel are not aware of any other class actions for damages or individual cases or claims made by prospective class members for the violations described herein;

c. This action will allow an orderly and expeditious administration of class claims. Economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured.

d. Without a class action, the class may continue to suffer damages and Defendants' violations of law will proceed without remedy; and

e. This action should present no difficulty that would impede its management as a class action, all class members are identifiable from defendants' records, and a class action is the best available means by which Plaintiffs and the class can seek redress for the harms caused to them by Defendants; and

75.    The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

76.    Pursuant to ORS 30.275(3)(c), notice of claim is satisfied by commencement of this action on the claim by or on behalf of the claimants within the applicable period of time provided in subsection.

## CLAIM I

### 42 U.S.C. § 1983 – Eighth and Fourteenth Amendment

*(against individual defendants)*

77. Plaintiffs reallege and incorporate each previous paragraph.

PAGE 19 – CLASS ACTION COMPLAINT

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

78. The Eighth and Fourteenth Amendments impose a duty on jail officials to provide humane conditions of confinement, including adequate medical and mental health care and protection from harms and threats to AICs safety and security.

79. Defendants were deliberately indifferent to plaintiffs' health, safety, serious medical needs, and other constitutional rights by:

    a.   failing to require adequate social distancing;

    b.   failing to require AICs, staff, or agents to wear masks or other PPE;

    c.   failing to quarantine COVID-infected AICs from uninfected AICs;

    d.   placing AICs that were symptomatic or who had tested positive with COVID in confined spaces, such as cells, workspaces, and transportation vehicles, with AICs that had not been infected with COVID-19;

    e.   requiring AICs that were housed in quarantine units (with COVID-19 positive AICs) to work, eat, serve food, and otherwise interact in person with AICs from nonquarantine units;

    f.   failing to quarantine AICs with COVID symptoms or awaiting testing or test results from uninfected AICs;

    g.   allowing corrections staff with known COVID-19 symptoms to work in the institutions;

    h.   failing to properly sanitize and disinfect facilities, equipment, and commonly touched surfaces such as telephones, tablets, and door handles;

    i.   failing to screen or take necessary steps to prevent employees or other people that were symptomatic or had been exposed to COVID from entering a facility;

PAGE 20 – CLASS ACTION COMPLAINT

    j.    failing to test symptomatic AICS;

    k.    failing to contact trace to identify people who were exposed to AICS or staff that tested positive;

    l.    failing to test people who were exposed to AICS or staff that tested positive; and

    m.  failing to screen or test AIC transfers, employees, and other people entering a facility for symptoms or exposure.

80.    As a result of their deliberate indifference, defendants violated plaintiffs' right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution. Defendants' failure to protect plaintiffs from COVID-19 infection resulted in permanent physical and emotional harm. Plaintiffs will require future treatment as a result of defendants' indifference.

81.    Plaintiffs are entitled to an injunction requiring social distancing as well as proper testing, sanitation, and compliance with other applicable guidelines provided by the CDC and OHA.

82.    Plaintiffs suffered physical harm and severe physical and mental pain and suffering. Accordingly, plaintiffs are entitled to economic and non-economic damages against defendants in an amount to be determined at trial.

83.    Defendants have shown reckless and callous disregard and indifference to inmates' rights and safety and are therefore subject to an award of punitive damages to deter such conduct in the future.

84.    Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

## CLAIM II

### Civil Rights Claim – 42 U.S.C. § 1983 – 8th and 14th Amendment - *Monell*

*(against the County)*

85.     Plaintiff realleges and incorporates each previous paragraph.

86.     The County has a policy, practice, and custom of the First and Fourteenth Amendment violations described in this Complaint. The policy, practice, and custom is so widespread that officials at all levels of the County agencies (including MCSO) were aware of and deliberately indifferent to the violations, ratified the violations, actively participated in the violations, or ordered others to participate in the violations.

87.     Plaintiffs and others repeatedly provided the County direct notice of the constitutional violations and the harm they were causing. Because of this notice, and because of the widespread nature of the violations, and the obviousness of the resulting harm, County officials at all levels (including the individual defendants) knew or should have known of the need to train and supervise those under their control to prevent the violations, but they repeatedly failed to provide such training or supervision.

88.     Without altering the burden of proof on any claim or defense, Plaintiffs allege that the actions of the individual county defendants were objectively unreasonable in light of clearly established law.

89.     At all times material, the County had policies and procedures for protecting AICs in its custody from exposure to COVID-19 that violated plaintiffs and putative class members' right under the Eighth Amendment of the U.S. Constitution to be free from cruel and unusual punishment. The County has failed to train officers, as alleged above, to the extent that failure to train amounts to deliberate indifference to the rights of AICs in Inverness.

PAGE 22 – CLASS ACTION COMPLAINT

90.     The County's policies posed a substantial risk of causing substantial harm to Inverness AICs, and the County was aware of the risk.

91.     As a direct result of the County and MCSO's policies, customs or practices, plaintiffs suffered physical harm and severe physical and mental pain and suffering. Accordingly, plaintiffs are entitled to economic and non-economic damages against defendants in an amount to be determined at trial for the violations of 42 U.S.C § 1983 and for plaintiff's attorney fees and costs pursuant to 42 U.S.C. § 1988.

### CLAIM III

### Negligence

*(against the County)*

92.     Plaintiffs reallege and incorporate each previous paragraph.

93.     The County was negligent by:

   a.   failing to require adequate social distancing;

   b.   failing to require AICs, staff, or agents to wear masks or other PPE;

   c.   failing to quarantine COVID-infected AICs from uninfected AICs;

   d.   placing AICs that were symptomatic or who had tested positive with COVID in confined spaces, such as cells, workspaces, and transportation vehicles, with AICs that had not been infected with COVID-19;

   e.   requiring AICs that were housed in quarantine units (with COVID-19 positive AICs) to work, eat, serve food, and otherwise interact in person with AICs from nonquarantine units;

   f.   failing to quarantine AICs with COVID symptoms or awaiting testing or test results from uninfected AICs;

PAGE 23 – CLASS ACTION COMPLAINT

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

    g.  allowing corrections staff with known COVID-19 symptoms to work in the institutions;

    h.  failing to properly sanitize and disinfect facilities, equipment, and commonly touched surfaces such as telephones, tablets, and door handles;

    i.  failing to screen or take necessary steps to prevent employees or other people that were symptomatic or had been exposed to COVID from entering a facility;

    j.  failing to test symptomatic AICS;

    k.  failing to contact trace to identify people who were exposed to AICS or staff that tested positive;

    l.  failing to test people who were exposed to AICS or staff that tested positive; and

    m.  failing to screen or test AIC transfers, employees, and other people entering a facility for symptoms or exposure.

94.    The County owes plaintiffs a higher standard of care because of the nature of incarceration. The County manages all aspects of plaintiffs' daily lives and decides with whom they will interact, where they will work, live, sleep, bathe, use the toilet, recreate, etc. Had plaintiffs been free persons, they would have been able to abide by social distancing, mask wearing, personal hygiene, and other obvious methods of protecting themselves from COVID-19. However, as incarcerated persons, defendant prevented plaintiffs from being able to take these measures. The County voluntarily took the custody of plaintiffs under circumstances such as to deprive them of normal opportunities for protection and created a non-delegable duty to ensure that plaintiffs were safe from COVID-19 while incarcerated. The County failed to meet

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249

their obligation to protect AICs from known, obvious and predictable threats to their health and safety.

95.     As a result of the County's negligence, plaintiffs contracted COVID-19, suffered physical harm and severe physical and mental pain and suffering.

96.     Plaintiffs satisfied the Oregon Tort Claims Act notice requirement by timely filing the instant lawsuit.

97.     As a result of the County's conduct, Plaintiffs suffered economic and non-economic damages in an amount to be proved at trial.

98.     Plaintiffs are entitled to a prevailing party fee, their costs and their disbursements.

99.     Plaintiffs should be fully and fairly compensated for their economic and non-economic damages in a sum that is just as determined by a jury.

**Injunctive Relief**

100.    Defendants' actions and/or inactions have injured Plaintiffs' rights as outlined above.

101.    Plaintiffs are entitled to injunctive relief requiring that Defendants provide adequate COVID-19 prevention, testing, and care, including:

   a.  mandate adequate social distancing can be accomplished to prevent the spread of the virus;

   b.  institute a safety plan to prevent additional COVID-19 outbreaks;

   c.  allow readily available and reasonable access to disinfecting solutions for the purpose of cleaning and disinfecting frequently touched objects, cells, common areas, dormitories, laundry, and eating areas;

   d.  provide regular COVID-19 testing for all AICs;

PAGE 25 – CLASS ACTION COMPLAINT

e.   waive all medical co-pays for those experiencing coronavirus-like symptoms;

f.   waive all charges for medical grievances during this health crisis;

g.   enjoin Defendants and their agents from retaliating against adults-in-custody for reporting symptoms, or seeking redress either administratively or from the Court;

h.   provide single-cell quarantine of persons who have come into contact with persons known to have coronavirus, isolation with proper medical checks for those who are experiencing coronavirus-like symptoms, and safe housing for Class Members as appropriate and without incorporating disciplinary characteristics to those preventive housing moves; and

i.   any other remedy the Court sees just and fit to address the constitutional violations outlined above.

///

PAGE 26 – CLASS ACTION COMPLAINT

**PRAYER**

WHEREFORE, Plaintiffs demand a trial by jury and pray for judgment against

Defendants as follows:

        a.  Injunctive relief;

        b.  Compensatory damages;

        c.  Punitive damages;

        d.  attorney fees, costs and disbursements; and

        e.  any other relief as the court deems just and proper.

DATED: April 5, 2021

**LAW OFFICES OF DANIEL SNYDER**

*s/ Carl Post*
Carl Post, OSB No. 061058
carlpost@lawofficeofdanielsnyder.com
John Burgess, OSB No. 106498
johnburgess@lawofficedanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
**Tara Herivel, OSB #070418**
Tara@heriveldefense.com
Telephone: (503) 893-5525
Attorneys for Plaintiff

**Law Offices of Daniel Snyder**
Attorneys at Law
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 241-3617 Fax (503) 241-2249